LOUISE EVON, ADMINISTRATRIX (ESTATE OF MICHAEL EVON), ET AL. *v.* HORACE ANDREWS ET AL.
(13617)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued April 6—decision released June 20, 1989

*Charles E. Oman III,* for the appellants (plaintiffs).

*James K. Robertson, Jr.,* with whom, on the brief, was *Pamela J. Norley,* for the appellees (defendant city of Waterbury et al.).

COVELLO, J. This is an appeal from a decision of the Superior Court that granted the defendants' motion to strike the fifth count of the plaintiffs' complaint that sought recovery from a municipality and various city officials based upon their negligence. We find no error.

The complaint alleged that on November 11, 1984, the plaintiffs' decedents[1] were killed when a fire destroyed their residence, a multifamily rental unit, located in Waterbury. The fifth count[2] of the complaint was directed against the city of Waterbury and various city officials.[3] The plaintiffs alleged that the city and its officers had been negligent in failing properly to enforce various statutes, regulations and codes concerning the maintenance of rental dwellings.[4] The

---

[1] The decedents were John Martin, Sr., John Martin, Jr., Michael Evon, Mary Evon and Shirley Hammick.

[2] The first three counts of the five count complaint were directed against Horace Andrews, as owner of the building. The three counts allege that the decedents' death was caused by Horace Andrews' negligence, carelessness and/or recklessness, and his wanton and willful acts or omissions. The fourth count of the complaint alleges that Horace Andrews fraudulently transferred the property in question to codefendant Sharon Andrews.

[3] The complaint names the city of Waterbury's fire marshall, fire chief, director of public health, city clerk and the fire marshall's office.

[4] The fifth count of the plaintiffs' complaint provides in part: "5. The fire safety laws of Connecticut, including but not limited to [General Statutes] §§ 29-292, 47a-7, 47a-51, 47a-52, 57a-53, 57a-54 (b), 57a-52c, 57a-55, 57a-58, 57a-59 (a) as well as the Connecticut Fire Safety Code, the Waterbury Fire Prevention Code, the Waterbury Housing Code and the Waterbury Health Code all serve to impose a duty on the aforesaid defendants, jointly and severally, to enforce said provisions of the law . . . .

"7. On several occasions prior to November 11, 1984, present and/or former employees of the City of Waterbury . . . had inspected or caused said premises to be inspected in the course of their employment.

"8. Pursuant to those inspections, [certain conditions] were identified as violations of [General Statutes] § 47a-53, the Connecticut Fire Safety Code,

defendants moved to strike this count in its entirety claiming that the enactments cited in the complaint "do

the Waterbury Health Code, the Waterbury Fire Prevention Code and the Waterbury Housing Code, or in the exercise of reasonable care and inspection should have been so identified.

"9. On diverse occasions over a period of several years, said employees issued citations against the landlord/owner of the premises, ordering him to correct said violations or in the exercise of reasonable care and in the course of their duties should have done so.

"10. The above-mentioned pain and suffering sustained by the aforesaid decedents was caused by the carelessness and negligence of said defendants in that:

"a. they failed to make reasonable and proper inspections;

"b. they failed to notify the landlord/owner, Horace Andrews, of conditions found in their inspections;

"c. they failed to conduct adequate inspections to discover said conditions or discover if the landlord had remedied or repaired said conditions;

"d. they failed to outline remedial action which, if taken, would effect compliance of the landlord as required by law;

"e. they unreasonably or improperly failed in their ministerial duty to enforce the relevant laws and codes;

"f. they unreasonably or improperly delayed and postponed the prosecution and enforcement of relevant laws and codes;

"g. they unreasonably and/or improperly failed to hold hearings and/or failed to maintain a record of any hearings, all to the decedent[s'] and living plaintiffs' detriment;

"h. they failed to make, maintain or record specific findings of fact as are reasonable, thereby preventing or hindering the plaintiffs' decedents and the public from evaluation and objection thereto, all to the decedents' and plaintiffs' detriment;

"i. they unreasonably or improperly enforced or failed to enforce, compliance regarding orders to the landlord/owner of violations of the relevant laws and codes and/or condemn the aforesaid premises;

"j. they unreasonably and improperly failed in their ministerial duty to follow the procedures prescribed by law in regard to hearings, appeals, delays, fact finding and/or enforcement all to the decedents' detriment;

"k. they unreasonably and/or improperly failed, neglected or delayed condemning the premises as unfit for human habitation because they were unsafe;

"l. they negligently failed to undertake their discretionary duty to follow enforcement procedures to assure that the aforesaid violations were corrected or that the building be condemned as unsafe;

"m. they failed to provide the standard of care then due and in particular as regard the care due once the violations were noted and compliance was not forthcoming; and

not impose a duty on the [municipal agents] or the city of Waterbury [and that] any duty to enforce said provisions is, as a matter of law, discretionary as to the agents of the City of Waterbury or is owed to the public at large and not to the plaintiffs." The trial court, *J. Healey, J.,* granted the defendants' motion, concluding that "[t]he allegations in the Fifth Count clearly spell out discretionary governmental duties and therefore cannot be the basis for recovery for individual injury." The plaintiffs declined to plead over[5] and on September 20, 1988, the trial court, *O'Brien, J.,* rendered judgment on the fifth count of the complaint in favor of the defendants. The plaintiffs thereafter appealed this decision to the Appellate Court and we transferred the matter to ourselves pursuant to Practice Book § 4023.

On appeal the plaintiffs claim that the trial court erred in granting the defendants' motion to strike because the fifth count of the complaint alleged negligent acts that may be characterized as either (1) ministerial in nature, or (2) discretionary acts that subjected an identifiable person to imminent harm. In either event, the plaintiffs claim that a cause of action was stated pursuant to our recent holding in *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 544 A.2d 1185 (1988). We do not agree with the characterization that the plaintiffs assign to these allegations.

"n. they failed in their supervising capacities to correct any of the above acts, omissions, regulations, statutes, and/or codes, violations, and/or said defendants who supervised or otherwise were responsible for the performance of inspections of the premises, negligently failed to undertake their ministerial duty to follow enforcement procedures to assure that the violations were corrected or that the building be condemned as unsafe. . . . "

On April 22, 1988, the defendants named in the fifth count moved to strike that count pursuant to Practice Book § 151 et seq.

[5] [Practice Book] "Sec. 157. —— SUBSTITUTE PLEADING: JUDGMENT

"Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading . . . ."

The gravamen of the fifth count is that the site of the fire contained numerous conditions that violated state regulations and state and local building codes and that the defendants were negligent in either failing properly to inspect the premises or to undertake remedial action to correct the deficiencies.

While "[a] municipality itself was generally immune from liability for its tortious acts at common law; *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 593, 479 A.2d 793 (1984) . . . its employees faced the same personal tort liability as private individuals." *Gordon* v. *Bridgeport Housing Authority,* supra, 165. "[A] municipal employee [however,] has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . . The word 'ministerial' 'refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion.' *Wright* v. *Brown,* 167 Conn. 464, 471, 356 A.2d 176 [1975]." *Fraser* v. *Henninger,* 173 Conn. 52, 60, 376 A.2d 406 (1977).

The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; see, e.g., *Sestito* v. *Groton,* 178 Conn. 520, 528, 423 A.2d 165 (1979); second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; see, e.g., General Statutes § 7-108 creating municipal liability for damage done by mobs; and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence. See, e.g., *Stiebitz* v. *Mahoney,* 144 Conn. 443, 448–49, 134 A.2d 71 (1957).

We do not consider in this instance the parallel analysis of governmental immunity that involves the question of whether the duty imposed upon the municipal official is a public duty or a private duty because the parties here agree that the duty is a public one.[6] See *Shore* v. *Stonington,* 187 Conn. 147, 444 A.2d 1379 (1982).

The plaintiffs first argue that the failure reasonably, properly and adequately to inspect the decedents' dwelling or prescribe remedial action to be taken by the owners as alleged in their complaint involved acts that were ministerial in nature and therefore the defendants were not immune from liability. We conclude that this is not the case. The plaintiffs do not allege that the defendants failed to inspect the dwelling. They allege that the defendants failed "to make *reasonable and proper* inspections" of the premises. (Emphasis added.) They further claim that the defendants failed *"to conduct adequate inspections."* (Emphasis added.) While an inspection by definition involves "a checking or testing of an individual against established standards"; Webster, Ninth New Collegiate Dictionary; what constitutes a reasonable, proper or adequate inspection involves the exercise of judgment. Further, no matter how objective the standard, an inspector's decision as to whether a building falls below a standard and whether remedial orders are therefore required involves the exercise of his or her judgment. It is axiomatic that "ministerial acts [are those that] are performed in a prescribed manner *without the exercise of judgment* . . . . " (Emphasis added.) *Gauvin* v. *New Haven,* 187

[6] In their complaint the plaintiffs cite General Statutes §§ 29-292, 47a-7, 47a-51, 47a-52, 57a-53, 57a-54 (b), 57a-52c, 57a-55, 57a-58 and 57a-59 (o). Title 57 does not exist in the Connecticut General Statutes, nor did it exist at the time of the alleged incident. The plaintiffs also allege that the defendants violated the Connecticut Fire Safety Code, the Waterbury Fire Prevention Code, the Waterbury Housing Code and the Waterbury Health Code.

Conn. 180, 184, 445 A.2d 1 (1982). Since the acts alleged in the fifth count required in some measure the exercise of judgment by a municipal employee, we conclude that they were not ministerial and therefore the defendants were immune from liability.

The plaintiffs next claim that their complaint alleged breaches of discretionary duties owed to their decedents, a group that was discrete, readily identifiable, and subject to imminent harm. We do not agree.

The "discrete person/imminent harm" exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state. In *Shore* v. *Stonington,* supra, a police officer stopped a speeding automobile. Despite evidence of intoxication, the officer did not arrest the driver. Later that evening, the driver struck a vehicle being operated by the plaintiff's decedent, who died from the injuries she sustained in the collision. We upheld the trial court's conclusion that the plaintiff had failed to show that the plaintiff's decedent was an identifiable person subject to imminent harm. In *Sestito* v. *Groton,* supra, a police officer, while on duty, observed a group of men drinking, arguing and scuffling in a parking lot outside a bar. The officer did not intervene until he heard gunshots. The plaintiff's decedent died as a result of being shot. This court concluded that the trial court erred in directing a verdict for the defendant town based upon governmental immunity. In resolving "conflicting testimony on the issue of imminence of harm in favor of the plaintiff, we held that the case should then have been submitted to the jury." *Shore* v. *Stonington,* supra, 153. This case does not present a situation in which this narrow exception applies.

The gravamen of the plaintiffs' allegations is that the defendants had not done enough to prevent the occur-

rence of a fire. The risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future. The class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of "identifiable persons" within the meaning of *Shore* v. *Stonington,* supra. Furthermore, the plaintiffs' decedents were not subject to "imminent harm." This is clearly not the situation in which a police officer stood by and watched a public brawl that resulted in a person being shot. See *Sestito* v. *Groton,* supra. The present allegations do not even rise to the level of the imminence we rejected in *Shore* v. *Stonington,* supra, in which a police officer permitted a drunk driver to continue on his way, resulting in the death of the plaintiff's decedent. In the present instance, the fire could have occurred at any future time or not at all. We cannot accept the proposition that the plaintiffs' decedents in this case were readily identifiable victims subject to imminent harm. As we observed in *Shore* v. *Stonington,* supra, 157, "[t]he adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society."

There is no error.

In this opinion the other justices concurred.