[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT
This action arises out of an incident which occurred on December 12, 1989, when decedent, Susan M. Smart, who was CT Page 7292 operating a motor vehicle, was struck by a railroad locomotive owned by defendant National Railroad Passenger Corporation.
Plaintiff, Nancy L. Cook, Administratrix of the decedent's estate, originally commenced this action on or about February 15, 1990 against defendant National Railroad Passenger Corporation and the Town of Wallingford. Subsequently, pursuant to a motion to cite in, dated March 12, 1991, plaintiff commenced this action by way of an amended complaint against defendants Glen King, Sharon Palmer, William W. Dickinson, Jr., Darrell York and Joseph J. Bevan.
Count one of the amended complaint, (which is not dated), is directed against defendant National Railroad Passenger Corporation ("Amtrak"), which owns, manages and operates intercity and commuter railroad service within Connecticut, and which "owns, operates, controls and maintains" railroad tracks and safety signal devices in the Town of Wallingford. (Amended Complaint, paras. 4, 5). Plaintiff alleges that Amtrak was negligent in various ways, including failure to respond to notice that the Parker Street safety signals had previously failed to operate, (para. 12G), and, despite this notice, it failed to issue a "stop and protect" order to the locomotive engineer, (para. 12H); failure to maintain the Parker Street crossing safety signals in operating condition, (para. 12I) and failure to install and maintain a backup safety system at the Parker Street crossing, (para. 12J). Neither defendants nor plaintiff has moved for summary judgment as to count one.
Counts two, three, five and six of the amended complaint allege negligence on the part of the individual defendants, Glen King, Sharon Palmer, Darrell York, and Joseph J. Bevan, respectively, who were all employees of the Wallingford Police Department.[1] Plaintiff alleges that these defendants were negligent in not performing certain duties, such as failing to properly notify Amtrak of the faulty crossing signals, failing to dispatch police officers to the site, and neglecting to develop operational plans or procedures to protect the public safety in the event of a crossing signal malfunction.
Count four alleges that defendant William W. Dickinson, Jr., the Mayor of Wallingford, owed a duty to protect the public safety, and that he was negligent by failing to perform said duty. CT Page 7293
Count seven is directed against the Town of Wallingford. This count alleges that the individual defendants, acting as "agents, servants or employees" of the town proximately caused the alleged "injuries, death and losses," and that the town is liable for the negligence of the individually-named defendants pursuant to General Statutes 7-465.
"In deciding a motion for summary judgment, the trial court is limited to considering the pleadings, affidavits and other documentary proof submitted by the parties"; (citation omitted) Orticelli v. Powers, 197 Conn. 9, 15, 495 A.2d 1023 (1985); and, summary judgment "`shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" (Citations omitted.) Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573,578, 573 A.2d 699 (1990). "`[T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact. . . .'" (Citation omitted.) Connell v. Colwell, 242, 246, 571 A.2d 116 (1990). "[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue.'" (Citations omitted). Id., 246. In addition, "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability along, although there is a genuine issue as to damages." Practice Book 385.
A. Defendant's Motion for Summary Judgment
Defendants, Town of Wallingford, Glen King, Sharon Palmer, William W. Dickinson, Jr., Darrell York, and Joseph J. Bevan, move for summary judgment as to counts two through seven of the amended complaint.
Defendants argue that defendant Amtrak had the sole duty of maintaining the Parker Street railroad crossing, and that this duty included correcting crossing gate malfunctions and warning motorists of oncoming trains. Defendants further maintain that the individual defendants are entitled to governmental immunity. Defendants contend that they were performing discretionary governmental duties owed to the public, and they argue that none of the recognized exceptions to the performance of discretionary duties apply in this case. Defendants also maintain that summary judgment should be granted as to the town because a municipality CT Page 7294 cannot be held liable under General Statutes 7-465 absent a finding that any of the individual defendants are liable. Finally, defendants contend that, even if the individual defendants were negligent, General Statutes 52-557N(a)(B) [sic] exempts a municipality from liability for "`negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.'" (Defendants' Memorandum, dated May 7, 1993, p. 24).
Defendants support their motion for summary judgment with incident reports submitted by dispatcher Palmer and sergeant/shift supervisor King, and an affidavit submitted by deputy chief of police York.
Plaintiff opposes defendants' motion on several grounds. Initially, plaintiff emphasizes that the amended complaint alleges that the various defendants are jointly and severally liable for decedent's injuries. Therefore, plaintiff argues that she is not seeking to shift liability away from the railroad defendant to some third party, but is seeking damages from several potentially liable parties, including the railroad. Plaintiff also maintains that, even if the duties performed by defendants were discretionary, defendants fall within the "identifiable person/imminent harm" exception to the governmental immunity doctrine. Finally, plaintiff argues that the town is not exempt from liability by virtue of General Statutes52-557N(a)(B) [sic]. Plaintiff emphasizes that she has not alleged a cause of action pursuant to 52-557, "but has only alleged that the municipality is liable as an indemnitor pursuant to Sec. 7-465." Plaintiff maintains that 7-465, by its terms, imposes liability when an individual official is found negligent, and that the indemnification statute does not override or nullify52-557.
Plaintiff supports her motion with excerpts of deposition testimony, statements given to the police from individuals who had witnessed the malfunctioning crossing signals on the date in question, a case/incident report, and portions of the Wallingford Police Department Rules and Regulations.
Defendant Amtrak also has submitted a memorandum in opposition to the municipal defendants' motion for summary judgment. The municipal defendants filed a response to Amtrak's opposition, and Amtrak has filed a supplemental memorandum in CT Page 7295 opposition to defendants' motion.
The municipal defendants have also submitted a "Request to take Judicial Notice Re: Their Motion for Summary Judgment," in which they ask the court to take judicial notice of a recent decision, Gonzalez v. Bridgeport, Superior Court judicial district of Fairfield at Bridgeport, Docket No. 253464 (June 2, 1993, Fuller, J.) Defendants argue that this decision supports their position that plaintiff's decedent was not an "identifiable person subject to imminent harm to whom they owed a special duty."
B. Plaintiff's Cross Motion for Partial Summary Judgment
Plaintiff moves for summary judgment as to liability only with respect to count two (defendant Glen King), count three, (defendant Sharon Palmer), and count seven (defendant Town of Wallingford), of the amended complaint. (Plaintiff's Motion for Summary Judgment, dated May 7, 1993).
Plaintiff concedes that, as a general rule, government employees are only responsible for the negligent performance of an official duty when such a duty is owed to an individual rather than to the public; however, plaintiff observes that certain exceptions to the governmental immunity doctrine have been recognized without regard to whether the duty is public or private. For example, liability may attach when an official's duty is ministerial, rather than discretionary; or, even if a duty is discretionary, an official may be held liable if the negligent failure to act is clear and unequivocal. Plaintiff emphasizes that such a duty has been found when it is evident to the official that a failure to act is clear and unequivocal. Plaintiff emphasizes that such a duty has been found when it is evident to the official that a failure to act is likely to subject an identifiable person to imminent harm. Plaintiff contends that it should have been apparent to defendants King and Palmer that their failure to act would subject individuals traveling on Parker Street to imminent harm; thus, their duty was clear and unequivocal, and plaintiff concludes that she is entitled to a finding of liability for their negligent failure to perform their duty.
In the alternative, plaintiff argues that defendants King and Palmer had a ministerial duty to comply with the rules and regulations of the police department, and, as a result, their CT Page 7296 noncompliance subjects them to liability. (Plaintiff's Supplemental Memorandum in Support, dated May 28, 1993).
With respect to the town, plaintiff argues that the town, as the municipal employer of the individual defendants, is liable to plaintiff pursuant to the municipal indemnification statute, General Statutes 7-148 [sic].
Historically, in Connecticut, "[a] municipality itself was generally immune from liability for its tortious acts at common law; . . . but its employees faced the same personal tort liability as private individuals." (Citations omitted.) Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 165, 544 A.2d 1185
(1988). In Gordon, the court reiterated its adherence to the "public duty doctrine," which furnishes the starting point in an analysis of municipal liability. Id., 170. The court emphasized that:
 [I]f the duty which the official authority imposes upon an officer is a duty to the public and not an individual injury, and must be redressed if at all in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for damages.
(Citations omitted.) Id., 166.
However, even after a duty has been characterized as either public or private, the issue of whether an act is ministerial or discretionary will often control "without regard to whether the duty is ascertained to be public or private." (Citation omitted.) Gordon v. Bridgeport Housing Authority, supra, 170. The Gordon court differentiated between a ministerial act and a discretionary act as follows:
 A municipality is immune from liability for the performance of governmental acts as distinguished from ministerial acts. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . On the other hand, ministerial acts are CT Page 7297 performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action.
(Citations omitted.) Id., 167-68.
In addition "`[A] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . .'" (Citation omitted.) Evon v. Andrews,211 Conn. 501, 505, 559 A.2d 1131 (1989). Although a municipal employee is generally entitled to immunity from liability for the performance of discretionary acts, there are three exceptions wherein liability may attach:
 [F]irst, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to object an identifiable person to imminent harm; . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; . . . and third, where the alleged acts involve malice, wantoness or intent to injure, rather than negligence.
(Citations omitted.) Id., 505.
"If by statute or other rule of law, the official's duty is clearly ministerial rather than discretionary, a cause of action lies for an individual injured from allegedly negligent performance." Shore v. Stonington, 187 Conn. 147, 153,444 A.2d 1379 (1982). As the Connecticut Supreme Court has explained:
 The word "ministerial" under our law refers to a duty which is to be performed by an official "in a given state of facts, in a prescribed manner, . . . without regard to or the exercise of his own judgment [or discretion] upon the propriety of the act being done." An example of such a ministerial duty is that of a town clerk to record an instrument which he has accepted for recordation in the land records. . . . A ministerial duty on the part of an official CT Page 7298 often follows a quasi-judicial determination by that official as to the existence of a state of facts. Although the determination itself involves the exercise of judgment, and therefore is not a ministerial act, the duty of giving effect, by taking appropriate action, to the determination is often ministerial.
(Citations omitted). Pluhowsky v. New Haven, 151 Conn. 337, 347,197 A.2d 645 (1964).
Count Two
Count two asserts that defendant Glen King, a sergeant and shift supervisor in the police department, "had received actual or constructive knowledge" that the Parker Street crossing safety signals were not functioning, and that he owed a duty to protect the public safety. Plaintiff alleges that King failed to properly notify defendant Amtrak of the faulty safety signals, and that he neglected to dispatch police officers to the Parker Street crossing to protect members of the public, "such as Plaintiff," against the hazards associated with nonoperational railroad grade crossing signals.
The defendants' motion for summary judgment as to count two, and plaintiff's cross motion for summary judgment as to count two, must be denied because there is a material issue as to whether defendant King's duty was discretionary or ministerial.
Defendants have submitted the affidavit of defendant York, the deputy chief of police, that provides the following facts. (Defendants' Exhibit D). York attests that, on December 12, 1989 at approximately 4:15 p.m., defendant Palmer received a phone call from a woman who stated that she was driving her car over the Parker Street railroad tracks, and that when she was in the middle of the tracks, a train approached. The woman said that during this time the crossing gates remained up, the crossing lights did not go on, nor did any bells sound. However, after she crossed the tracks, she reported that the gates did go down. (Exhibit D. paras. 5, 6). Upon receiving the phone call, Palmer immediately called Amtrak police to report the problem. (Exhibit D, para 7). York further states that, later that same day, at approximately 5:50 p.m., another individual arrived at the police department and informed defendant King of a faulty crossing gate CT Page 7299 at Parker Street. This individual reported that a train had come through at approximately 4:00 p.m., and that a car traveling over the tracks had almost been struck. This person said that the gate had failed to come down, and neither the visual, nor audible, signals worked. (Exhibit D, para. 11). King told Palmer to telephone Amtrak to inform them of the problem, but Palmer told him she had already telephoned Amtrak pursuant to the complaint received at 4:15 p.m. Just as King was preparing to phone Amtrak, Amtrak police phoned and informed him that there had been a collision between a train and a car at the Parker Street Crossing. The car was operated by Susan Smart, who was killed in the collision. (Exhibit D, paras. 12, 13, 14).
York further attested that, prior to December 12, 1989, the department had received complaints that railroad crossing gates in Wallingford were stuck in the "down position". (Exhibit D, para. 10). York stated that the standard departmental practice was to first notify Amtrak of the malfunction, and then to dispatch an officer to direct backed-up traffic and to prevent motorists from attempting to cross the tracks. York attested that, prior to December 12, 1989, the department had never received a complaint that a crossing gate was stuck in the "up position". (Defendants' Exhibit D, para. 10).
Plaintiff has submitted excerpts of the Wallingford Police Department Rules and Regulations. The excerpted portion of section 6.15 provides that: "The Shift Commander shall call the attention of the Chief of Police or the Deputy Chief of Police to all matters of importance such as unusual occurrences, major crimes, emergencies, . . . ." Plaintiff also has attached an uncertified copy of portions of defendant King's deposition testimony. (Plaintiff's Supplemental Memorandum, Exhibit A.) Plaintiff argues that these excerpts indicate that King "felt that the report of the railroad gate being stuck open would qualify as an unusual occurrence, and that he "agreed that a report of gates being stuck in an up position should be taken as an emergency." (Plaintiff's Supplemental Memorandum, p. 2). However, as previously submitted, deposition testimony does not qualify as a judicial admission, and defendant King could contradict this statement at trial, and a question for the jury to decide may then arise. See Esposito v. Wethered, 4 Conn. App. 641,645, 496 A.2d 222 (1985).
Plaintiff alleges, in part, that defendant King failed to dispatch police officers to the scene, and, in Gordon v. CT Page 7300 Bridgeport Housing Authority, supra, 180, the court did conclude as a matter of law that "the general deployment of police officers is a discretionary governmental action. . . ." However, plaintiff also alleges that King failed to properly notify Amtrak and that he failed to protect the public safety. A determination as to these allegations will depend, in part, on the type of duty imposed upon King by the departmental rules and regulations. At this stage of the proceedings it is not clear whether the duty imposed by section 6.15 of the departmental regulations is discretionary or ministerial; thus, a material issue remains and defendants' motion for summary judgment as to count two, and plaintiff's cross motion as to count two, are denied.
Count Three
Count three alleges that Sharon Palmer, a civil dispatcher, also had actual or constructive knowledge that the Parker Street crossing safety signals were nonoperational, and that she failed to properly notify Amtrak of the nonfunctioning signals. In addition, plaintiff asserts that Palmer did not dispatch police officers to the scene of the crossing, and that she failed to communicate her knowledge concerning the signals to her supervisor. However, defendants represent that Palmer died on June 26, 1992. Defendants further represent that plaintiff's counsel informed them that he would withdraw count three, but that said withdrawal had not yet occurred. (Defendants' Memorandum in Support, p. 26).
A General Statutes 52-599 provides for the survivial [survival] of a cause of action, and it states, in part, that:
 (a) A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased.
 (b) A civil action or proceeding shall not abate by reason of the death of any party thereto, but may be continued by or against the executor or administrator of the decedent. . . . If a party defendant dies, the plaintiff, within one year after receiving written notification of the defendant's death, may apply to the court in which the CT Page 7301 action is pending for an order to substitute the decedent's executor or administrator in the place of the decedent, and, upon due service and return, the action may proceed.
In the event that a coplaintiff or codefendant dies, General Statutes 52-600 further provides that:
 If there are two or more plaintiffs or defendants in any action, one or more of whom die before final judgment, and the cause of action survivies [survives] to or against the others, the action shall not abate by reason of the death. After the death is noted on the record, the action shall proceed.
There is no indication in the file that plaintiff has withdrawn count three, or that an executor or administrator of decedent Palmer has been substituted as a party defendant, or that Palmer's death has been noted on the record. Accordingly, the court will reserve judgment on the parties' motions for summary judgment as to count three until the status of this count is resolved.
Counts Four, Five and Six
Defendant also moves for summary judgment as to counts four, five and six. Count four is directed against the Mayor of Wallingford. It alleges that, pursuant to the town charger, the mayor, as the town's public safety director, had a duty to protect the public safety, and that he failed to develop and effectuate a plan of operation to protect the public safety in the event of a railroad crossing signal failure.
Counts five and six are directed against Darrell York, deputy and acting chief of the police department, and Joseph J. Evans, the police chief, respectively. These counts allege that these defendants failed to protect the public safety, and that they neglected to train departmental employees in the protection of the public safety. Counts five and six further assert that these defendants failed to develop a plan of operation, or procedure, to protect public safety in the event of a railroad crossing signal failure. Each count also alleges that the defendant's failure created "a condition which is dangerous to a member of the public such as the Plaintiff." CT Page 7302
Whether the act complained of is ministerial or governmental is a factual question which depends on the nature of the particular act. Gauvin v. Board of Education, 187 Conn. 180,186, 445 A.2d 1 (1982). However, Connecticut courts "have previously approved the practice of deciding the issue of governmental immunity as a matter of law." (Citations omitted.) Kolaniak v. Board of Education, 28 Conn. App. 277, 279,610 A.2d 193 (1992).
In Kolaniak, supra, plaintiff was injured when she fell on a snow-covered walkway on a school's premises. Prior to the onset of winter, the board of education had issued a bulletin to all maintenance personnel that the walkways were to be inspected and cleaned on a daily basis; however, there was no evidence that the walkway had been shoveled, salted or sanded prior to plaintiff's fall. The defendant board argued that the workers had the responsibility of deciding whether there was sufficient accumulation to warrant clearing the walkways, thus, they were performing a discretionary duty.
The court concluded that the "determination as to when to clear a sidewalk . . . is not a discretionary function." Id., 281. The court observed that the board's directive to custodians and maintenance workers was clear — "they were to keep the walkways clear of snow and ice." Id. The court refused to "equate the act of clearing snow and ice by maintenance workers, in accordance with a directive by the policymaking board of education, with the policy decisions that are usually afforded protection by the doctrine of governmental immunity." The court concluded that the trial court had properly determined, as a matter of law, that the maintenance workers were engaged in a ministerial function. Id., 281-82.
Conversely, in Viens v. Graner, 9 CTLR 306 (July 26, 1993, Teller, J.), in the context of a motion to strike, the court concluded that there was an issue of fact as to whether a school principal had a discretionary duty to supervise the dismissal of students at the end of a school day. A student had sustained personal injuries when two other students allegedly ran down a school hallway and crashed into him. The complaint alleged that the defendant principal was negligent by "failing to reasonably supervise, monitor or promulgate rules regarding student pedestrian traffic or in failing to proscribe running in the hallways of the school." Id., 306. CT Page 7303
The court noted that the defendant had failed to demonstrate, as a matter of law, that a principal's actions in supervising student dismissals was a discretionary duty, and that plaintiff had asserted a legally sufficient claim that would "permit proof of facts (if such facts exist)" as to whether the duty was ministerial or discretionary. The court explained that proof that the board of education had issued instructions or administrative orders to the principal "requiring that student dismissals were to be supervised in a certain manner or that regulations regarding running in the halls were to be promulgated, may give rise to such a ministerial duty." Id., 308. The court emphasized that the "holding in Kolaniak, supra, compels the conclusion that an issue of fact exists as to whether the acts of [the principal] were ministerial or discretionary in nature. . . ." Id., 308.
Similarly, in the present action, the parties have not established, as a matter of law, whether the duties alleged in counts four, five and six are discretionary or ministerial. As indicated, supra, plaintiff attached a copy of the police department rules and regulations; however, neither side has attached any documentation that establishes the nature of the duties allegedly imposed upon the mayor, the deputy police chief, or the police chief.
Therefore, an issue of fact remains as to whether the defendants' alleged failure to protect the public safety, to train departmental employees, and to develop operational plans or procedures to protect the public safety, constitutes a ministerial or discretionary duty. Accordingly, defendants' motion, and plaintiff's cross motion, are denied as to counts four, five and six.
Count Seven
Count seven is directed against the Town of Wallingford, and it asserts that the town is liable for the negligence of the individual defendants pursuant to General Statutes 7-465. This section provides that a municipality shall pay, on behalf of any municipal employee, all sums which the employee is obligated to pay "by reason of the liability imposed upon such employee by law for damages awarded for . . . physical damages to persons or property . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in CT Page 7304 the performance of his duties and within the scope of his employment . . . and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty."
"[I]n a suit under [section] 7-465, any municipal liability which may attach is predicated on prior findings of individual negligence on the part of the employee. . . ." Wu v. Fairfield,204 Conn. 435, 438, 528 A.2d 364 (1978).
As there is no evidence to support a finding that King and Palmer acted in a wilful or wanton manner, and since they were acting within the scope of their employment, the defendants' motion as to count seven and the plaintiff's cross motion as to count seven are denied.
Richard J. Stanley, Judge
Counsel notified 8/16/93 By Card [x] Copy of memo Computer and copy To Reporter of Judicial Decisions