[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
Before the court is the defendant's, Oxbow Realty, Inc. (Oxbow), motion to cite in three apportionment defendants, the City of New London, Bruce Renehart, New London's chief of police, and Joan Belden, the animal control officer for the City of New London (Apportionment Defendants). Pursuant to General Statutes § 52-102 and 52-572h, Oxbow seeks to cite in the apportionment defendants "so that a complete assessment of the percentage of responsibility can be made between all parties to this action brought by the plaintiff, Sylvia Richmond (Richmond)." (Oxbow's Motion to Cite In Additional Party Defendant's).
According to the underlying revised complaint in this action dated October 5, 1995, the facts are as follows. Oxbow managed, operated and maintained an apartment building in New London, Connecticut. One of Oxbow tenant's, Melaine Mabry, was the owner and keeper of an American Staffordshire Terrier, more commonly referred to as a "pit bull". In her complaint, Richmond asserts that Oxbow was aware of the dog's presence in the building, and that the defendant also allegedly knew of its dangerous propensities. On January 13, 1994, the plaintiff was attacked by the dog and suffered severe personal injuries to her legs and feet. Count one of the plaintiff's complaint alleges that Oxbow was negligent in allowing a dangerous dog to reside in the building as well as for Oxbow's alleged failure to secure the common tenant areas of the apartment house. Count two of the underlying complaint further alleges that the conditions present at the apartment house constituted a nuisance.
According to Oxbow's apportionment complaint which was attached to its motion to cite-in, the apportionment defendants were allegedly negligent because they had been called to the apartment house on numerous occasions prior to the attack, and failed to take any action to secure the dog or arrest, imprison, or otherwise sanction its owner. The apportionment complaint specifically alleges that the apportionment defendants failed to follow the mandates of CT Page 1379 General Statutes § 22-363, 22-367, and 22-358. In its brief in support of its motion to cite-in, Oxbow claims that the apportionment defendants are necessary parties to this action pursuant to General Statutes § 52-572h, and that they are not immune from suit under the doctrine of governmental immunity because they were charged with the performance of ministerial acts. Furthermore, Oxbow alternately alleges that even if this court were to find that the apportionment defendants' acts were discretionary, the court should still cite them in because the plaintiff comes within the "identifiable person/imminent harm" exception to the doctrine of governmental immunity.
The plaintiff objects to the defendant's motion to cite in claiming that the apportionment defendants are immune from suit, that they are not necessary parties to this action, and finally that the defendant's motion is untimely and will prejudicially delay the start of the trial. Both sides have submitted briefs in support of their respective positions.
DISCUSSION
General Statutes § 52-102 states:
 Upon motion made by any party or nonparty to a civil action, the person named in the party's motion or the nonparty so moving, as the case may be, (1) may be made a party by the court if that person has or claims an interest in the controversy, or any part thereof, adverse to the plaintiff, or (2) shall be made a party by the court if that person is necessary for a complete determination or settlement of any question involved therein; provided no person who is immune from liability shall be made a defendant in the controversy.
Because under General Statutes § 52-572h(c), "each party against whom recovery is allowed [for negligence in personal injury actions] shall be liable to the claimant for his proportionate share of the recoverable [economic and noneconomic damages]," Oxbow claims that the proposed apportionment defendants are necessary parties who must be brought in under § 52-102 (2). CT Page 1380
"The decision whether to grant a motion for the addition of a party to pending legal proceedings rests generally in the sound discretion of the trial court." Lettieri v. AmericanSavings Bank, 182 Conn. 1, 13, 437 A.2d 822 (1980). "Factors to be considered include the timeliness of the application, the possibility of prejudice to the other party and whether the applicant's presence will enable the court to make a complete determination of the issues." A. Secondino Son,Inc. v. LoRicco, 19 Conn. App. 8, 14, 561 A.2d 142 (1989).
The plaintiff opposes the motion as untimely. The plaintiff correctly states that the action was commenced on June 30, 1994, and that it was claimed to the jury trial list on May 11, 1995. The court also is aware that the case is scheduled to begin on February 1, 1996, and that the defendant's motion to cite in was heard on January 22, 1996. Furthermore, the plaintiff in this case is 73 years of age, and thus the prosecution of the complaint is a privileged matter.
Under 53-572h(c), however, a defendant is entitled to an apportionment of his liability among all tortfeasors. As such, Connecticut's trial court have held that apportionment defendants "[are] necessary as party defendant[s] for a complete determination of the question of proportionate liability." Howard v. Capellan, 2 Conn. L. Rprt 68 (July 12, 1990, Maloney, J.). While the court may have broad discretion in determining whether to cite-in an additional party, such discretion is limited when the entity to be cited in is a necessary party. Under the plain language of 52-102(2), the named person in the motion shall be made a party in order to make a complete determination of any question involved in the case. Thus, even though the action has been pending for more than one year, and the defendant's motion to cite in the apportionment defendants was made at the eve of trial, the court has no discretion to deny the motion if they are necessary parties and not immune from liability.
General Statutes § 52-102(2) provides that "no person who is immune from liability shall be made a defendant in the controversy." "The presence of immune persons in the suit is not `necessary for a complete determination or settlement of any question involved therein. . . .' Wilson v. CedarCrestRegional Hospital, 9 CSCR 528 (April 11, 1994, Sullivan, J.) Therefore, the court must determine whether the City of New CT Page 1381 London, its animal control office, and its chief of police are immune from suit under the doctrine of governmental immunity.
The plaintiff asserts that the apportionment defendants are immune from suit under General Statutes § 52-557n(a)(2)(B) which states:
 Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.
The plaintiff claims that the acts or omissions of the apportionment defendants were discretionary. In opposition, the defendant proffers that the proposed apportionment defendants are not immune from suit because they failed to perform or misperformed their ministerial duties.[1]
"Generally, liability may attach for a negligently performed ministerial act, but not for a negligently performed discretionary act." Kolaniak v. Board of Education, 28 Conn. App. 277,281, 610 A.2d 716 (1992). The defendant asserts that the apportionment defendants did not carry out the mandates of § 22-363 by failing to fine or imprison the owner of the bit pull after repeated numerous complaints and visits to the apartment house, and by releasing the dog without conducting a proper examination to determine whether a quarantine should have remained in affect.
General Statutes § 22-363 states:
 No person shall own or harbor a dog or dogs which is or are a nuisance by reason of vicious disposition or excessive barking or other disturbance, or, by such barking or other disturbance, is or are a source of annoyance to any sick person residing in the immediate vicinity. Violation of any provision of this section shall be an infraction for the first offense and such person shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both for each subsequent offense and the court or judge may make such order concerning the restraint orCT Page 1382 disposal of such dog or dogs as may be deemed necessary.
(Emphasis added.).
Surprisingly, both the defendant and the plaintiff rely on the underlined language and agree that the above statute mandates a ministerial act. The parties' conclusion is erroneous, however, because the underlined portion of the statute merely states the penalties of a person found to be in violation after a legal proceedings in a court of law. The statute provides no independent right or duty of the apportionment defendants to fine or imprison the owner of the dog. An animal control or police officer must exercise his or her discretion in determining whether a dog is a nuisance, and it is clearly a discretionary act in deciding whether to pursue any alleged violation in court. In addition, the statute clearly mandates that the errant dog must be an annoyance to a "sick person." Neither the apportionment complaint, nor the underlying pleadings allege such a fact.
The defendant further asserts that the proposed apportionment defendants breached their ministerial duty when they quarantined the dog after two previous biting incidents, but then released the dog without conducting a proper examination "to determine whether such quarantine shall be continued or removed." (Defendant's brief, p. 3). General Statutes § 22-358(c) states:
 If such officer finds that the complainant has been bitten or attacked by such dog, cat or other animal when the complainant was not upon the premises of the owner or keeper of such dog, cat or other animal the officer shall quarantine such dog . . . in a public pound or order the owner or keeper to quarantine it in a veterinary hospital, kennel or other building or enclosure approved by the commissioner for such purpose. When any dog . . . has bitten a person on the premises of the owner or keeper of such dog . . . the chief canine control officer, any canine control officer, any municipal animal control officer or regional animal control officer may quarantine such dog . . . on the premises of the owner or keeper of such dog . . . . The commissioner, the chief canine control officer, CT Page 1383 any canine control officer, any municipal animal control officer or any regional animal control officer may make any order concerning the restraint or disposal of any biting dog . . . as he deems necessary. . . . On the fourteenth day of such quarantine the dog, cat or other animal shall be examined by the commissioner or someone designated by him to determine whether such quarantine shall be continued or removed. . . .
According to the New London police incident report dated January 13, 1994 included within exhibit A, the dog had attacked another individual who was walking on the street prior to the attack on the plaintiff. The report also indicates that the plaintiff had also been previously attacked in the hallway of the apartment house. After the first off premises attack, there is no dispute that the dog was quarantined at the pound as required by the statute. When the plaintiff was initially attacked at the apartment house, the authorities used their discretion and required that the owner quarantine the dog at home. The defendant claims, however, that the proposed apportionment defendants released the dog after the expiration of both quarantines without conducting a proper examination to determine whether the quarantine should remain, and thereby breached a ministerial duty.
The statute clearly states that such an examination must occur. It is important to note, however, that the defendant is not claiming that the examination did not occur, but that the apportionment defendants did not properly conduct its investigation. The statute, however, does not mandate the type of investigation that the commissioner must conduct, or what factors he must consider in making his determination. It merely states that "[o]n the fourteenth day of such quarantine the dog . . . shall be examined by the commissioner . . . to determine whether such quarantine shall be continued or removed." On its face, the commissioner must rely on his own judgment and discretion in reaching his conclusion. Therefore, while the quarantine itself is mandated by § 22-358(c) after a biting incident, the decision to continue or end the quarantine is left within the sound discretion of the commissioner or his designee.
Based on the above analysis, the court finds that the proposed apportionment defendants are immune from suit based on the doctrine of governmental immunity because they were CT Page 1384 engaged in discretionary acts. The defendant is correct in asserting that whether an act is discretionary or ministerial is usually a question of fact for the jury, but our Supreme Court has "approved the practice of deciding the issue of governmental immunity as a matter of law." Gordon v.Bridgeport Housing Authority, 208 Conn. 161, 170,544 A.2d 1185 (1988).
Finally, even if the acts or omissions of the proposed apportionment defendants were discretionary, Oxbow claims that the apportionment defendants are not immune because they knew or should have known that their acts or omission would "subject an identifiable person [Richmond] to imminent harm."Evon v. Andrews, supra, 211 Conn. 505. The identifiable/imminent harm exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state. Id. 505. Contrary to the defendant's claim that whether the exception applies is a question of fact for the jury, the court in Evon specifically upheld the trial court's granting of a motion to strike on the basis that the identifiable person/imminent harm exception did not apply as a matter of law.
The defendant relies on Brown v. Dooling, Superior Court, judicial district of Ansonia/Milford, Docket No. 032598S (August 14, 1995, Skolnick, J) for the proposition that the application of the exception is a question of fact for the jury. The defendant's reliance on Brown and other cases cited, however, is misplaced. First, the court in Brown was deciding an issue of summary judgment and not a motion to cite-in. Secondly, the facts of Brown are clearly distinguishable from the facts of this case. In Brown, the Milford police and fire department were called to Brown's home after receiving a call that one Greg Brown, a teenager home alone, was about to commit suicide. The police and fire officials arrived at the unlit home, and then noticed a light turned-on in an upstairs room. The officials entered the home, and eventually caught Brown as was exiting the back door. The police questioned Brown, and then conducted a "cursory' search of the home. After asking Brown some more questions, the officials left and instructed Brown to tell his parents of their visit. When the boy's father arrived home, Brown was found dead in an upstairs room from a self-inflicted gun shot wound. The defendants moved for summary judgment on CT Page 1385 the basis of governmental immunity, but the request was denied because the court found that there were facts in dispute as to the imminence of harm to Brown, whether he was an identifiable person as a result of the call to the station, and whether the defendants assumed a special duty or took charge of Brown upon arriving at the scene.
In this case, however, the exhibits demonstrate that on January 7, 1994, the police arrived at the apartment house after receiving another complaint from the plaintiff about the dog. They eventually spoke with the owner of the dog and told her to keep it in a cage. Thus, even though there were repeated complaints about the dog, the exhibits and the apportionment pleading to do not support the conclusion that the plaintiff was in imminent harm. Each time a complaint was lodged, some type of official action was taken to alleviate the problem or warn the owner. Six days had elapsed from the time of the last complaint on January 7, 1994 until the plaintiff was severely injured on January 13, 1994. Though the eventual injury and attack by the dog was very unfortunate, "the adoption of a rule of liability where some kind of harm may happen to someone would cramp the exercise of official discretion beyond the limits desirable in our society." Evon v. Andrews, supra, 211 Conn. 508. As a matter of law, the court finds that the plaintiff does not fall within the confines of the imminent harm/identifiable person exception to the doctrine of governmental immunity.
Thus, having reached the conclusion that the proposed apportionment defendants' acts or omissions were discretionary, and that the plaintiff does not fit within imminent harm/identifiable person exception to the doctrine of government immunity, the court finds that the apportionment defendants are, as a matter of law, immune from suit and not capable of being cited-in for purposes of apportionment under § 52-102. Therefore, Oxbow's motion to cite-in the apportionment defendants is denied.
CONCLUSION
For the above stated reasons, the defendants' motion to cite in the City of New London, Bruce Renehart, New London's chief of police, and Joan Belden, the animal control office for the City of New London is denied. CT Page 1386
Hurley, J.