# DEBBIE L. FLORENCE, (EXECUTRIX, ESTATE OF JENNY L. MCMECHEN), ET AL. *v.* TOWN OF PLAINFIELD ET AL.

Superior Court, Complex Litigation Docket at Tolland
File No. X07-CV03-0084216S

Memorandum filed August 11, 2006

*Santos & Seeley, Loughlin Fitzgerald, P.C., and Montgomery McCracken,* pro hac vice, of the Pennsylvania bar, for the plaintiffs.

*Horton, Shields & Knox, P.C., Ryan, Ryan, Johnson & Deluca, LLP, Williams, Walsh & O'Connor, LLC,* and *Stephen R. Sarnoski,* assistant attorney general, for the defendants.

SFERRAZZA, J. The defendants move for summary judgment as to all counts in this wrongful death action filed by the plaintiff Debbie Florence, executrix for the estates of Jenny L. McMechen and Baby Boy McMechen. The defendants are the town of Plainfield and several present or former police officers employed by that town. The bases for the motions are qualified governmental immunity and a lack of proximate causation.

Summary judgment shall be granted if the pleadings and documentary proof submitted demonstrate that no genuine dispute as to material facts exists and that the movant is entitled to judgment as a matter of law. Practice Book § 17-49.

The first and second counts of the second amended complaint assert direct liability against the town of Plainfield under General Statutes § 52-557n. At oral argument, Florence advised the court that these claims are abandoned. The remaining counts against the municipality are indemnification claims under General Statutes § 7-465.

The following facts are undisputed. In 1994, Michael Latour was convicted of the assault in the first degree of a girlfriend and, ultimately, after a violation of probation, received a sentence of eight years incarceration, suspended after serving five years, plus a period of probation. In December, 2000, Latour was released from prison. Shortly thereafter, he developed a relationship

with Jenny McMechen, who became pregnant with their child.

On May 28, 2001, Jenny McMechen complained to the state police that Latour had assaulted her three weeks previously, had confined her company to himself and his family, and, on May 27, 2001, strangled her, slammed her head against a car and repeatedly threatened to kill her. The state police relayed that information to then Plainfield police Officer James Esposito. Esposito had another police officer, Gerry Geyer, contact Jenny McMechen. On that date, Jenny McMechen confirmed some of the information and expressed fear of Latour but declined to press charges against him or go to the police station to give a statement. Instead, she stated that she was leaving for Florida the next day and, if Latour caused her further trouble, would seek a restraining order. In June, 2001, Esposito left the police department.

On November 17, 2001, Jenny McMechen reported in person to Plainfield police Officer Maurice Remillard that on the day before, Latour had refused to allow her to use her car, that he placed a belt around her neck, hoisted her up by that belt, shoved her and slashed her stomach three times with scissors. Geyer joined Remillard during the interview and photographed Jenny McMechen's abdomen. Remillard observed red marks on her neck and lines on her abdomen that Remillard characterized as "scratches" rather than slashes or gouges.

Neither Remillard nor Geyer notified Latour's probation officer of Jenny McMechen's complaint, but instead Remillard decided to apply for an arrest warrant for Latour regarding the November 17, 2001 incident. On November 23, 2001, Remillard drafted the warrant application. On November 29, 2001, Remillard signed the warrant, and Sergeant Michael Suprenant took his oath.

Neither Remillard nor Suprenant asked that the warrant application be reviewed on an expedited basis.

The Windham state's attorney's office reviewed the warrant application, prepared the charging document and signed it on December 11, 2001. On December 7, 2001, while the arrest warrant application was at the state's attorney's office, Latour telephoned Remillard and arranged to meet with Remillard in the evening. Latour disclosed to Remillard that he was aware of the arrest warrant application and denied injuring Jenny McMechen on November 17, 2001, as she had claimed. Remillard told Latour that the arrest warrant application was in the hands of the court. Remillard made no warrantless arrest of Latour at that time. On December 17, 2001, the judicial authority issued the arrest warrant, which was returned to the Plainfield police department on December 20, 2001. The issuing judge set bond on the warrant at $12,500.

On December 24, 2001, the arrest warrant information was entered into the statewide computer database known as COLLECT. That same day, Plainfield police officers Todd Shaw and Paul Gadue attempted to execute the warrant at Latour's residence but could not find him.

On December 30, 2001, at about 12:30 a.m., Shaw saw a motor vehicle with several occupants leave the Latour residence driveway. Shaw followed the vehicle, which went into a parking lot. Latour exited the vehicle and fled. Shaw pursued Latour on foot but failed to catch him. Shaw returned to his cruiser and called for assistance. Gadue arrived, and both officers searched the surrounding area without success.

The following day, December 31, 2001, Latour drove Jenny McMechen to a friend's house. A New Year's Eve party was planned for that evening. Later in the day,

Latour returned to that residence and shot Jenny McMechen, killing her and the nine month old fetus.

Florence alleges that Esposito negligently failed to interview Jenny McMechen personally after her May 28, 2001 complaint to the state police, took too long to prepare his report about the incident, failed to consult with the state's attorney's office about the incident, failed to arrest Latour, failed to seek an arrest warrant for him and failed to ensure that other officers continued to investigate the incident.

As to Geyer, Florence alleges, regarding the May 28, 2001 complaint, that Geyer negligently failed to respond diligently to Jenny McMechen's predicament, that his investigation of that incident was insufficient and that he failed to pursue criminal charges against Latour in connection with that incident. Regarding the November 17, 2001 incident, Florence asserts that Geyer negligently failed to respond to the complaint, failed to pursue violation of probation charges against Latour by failing to relay the complaint to Latour's probation officer, failed to serve the arrest warrant in a timely fashion and failed to ensure that other officers timely served the warrant.

The counts against Shaw and Gadue allege that on December 24, 2001, they negligently failed to locate Latour in order to execute the arrest warrant, and that on December 30, 2001, they negligently pursued and searched for Latour when he fled from the vehicle.

Regarding Suprenant, Florence avers that he negligently supervised Remillard regarding the November 17, 2001 incident and the arrest warrant application process, failed to execute the arrest warrant in a timely fashion and failed to follow up Jenny McMechen's complaint properly.

Finally, as to Remillard, Florence alleges that he failed to investigate the November 17, 2001 incident

adequately, failed to investigate Latour's drug dealing and possession of firearms adequately, failed to coordinate his efforts with other officers and agencies adequately, failed to pursue violation of probation charges against Latour by reporting the November 17, 2001 incident to Latour's probation officer, that the arrest warrant application Remillard prepared was incomplete and untimely, that Remillard failed to obtain an expedited review of the warrant application, failed to arrest Latour without a warrant on December 7, 2001, failed to execute the arrest warrant in a timely manner once it was issued or to coordinate its execution by others and that he tried to use Jenny McMechen's predicament as leverage to obtain information regarding Latour's drug trafficking.

I

GOVERNMENTAL IMMUNITY

It should be noted that in deciding whether these defendants have qualified governmental immunity, the circumstance of whether these police officers actually were negligent and caused the wrongful deaths of Jenny McMechen and Baby Boy McMechen is immaterial. Governmental immunity is a bar to liability whether the case of negligence against the municipal employee is a strong or weak one and whether the result is trivial or tragic.

Florence argues that the duty to arrest Latour on receipt by the Plainfield police officers of the information relayed to them by the state police on May 28, 2001, and the information provided by Jenny McMechen on November 17, 2001, was, by virtue of our domestic violence statutes, ministerial rather than discretionary. The court disagrees on the basis of the uncontroverted facts of this case.

It is true that General Statutes § 46b-38b (a) requires that a police officer who receives "speedy information" that creates probable cause to believe that an individual

has committed a family violence crime, as defined by General Statutes § 46b-38a, shall arrest and charge that individual with the appropriate crime. Whether the predicate facts triggering the mandate of § 46b-38b (a) exist, however, requires police officers to exercise discretion and judgment.

As to both the May 27 and November 16, 2001 incidents, Jenny McMechen contacted the Plainfield police the day after the reported attacks occurred. No appellate level decision has characterized day old reports as speedy information. At a minimum, the police officers who received such belated complaints had to evaluate whether the information conveyed was speedy information.

Next, the police officers had to conceive the nature and extent of any investigation needed to gather corroborative or discrediting evidence and learn facts sufficient to make a probable cause determination. Once that task was completed, the officers had to make credibility assessments and judge whether the credible facts supported a finding of probable cause. Clearly, such actions necessitate the use of judgment and discretion.

As to the May 27, 2001 event, Jenny McMechen refused to go to the Plainfield police station to meet with the officers. That deprived the officers of the opportunity to see bruises or other signs of struggle and to take a statement. The family violence statutes require arrest only when probable cause is shown. The mere whiff of suspicion is inadequate. Indeed, § 46b-38b (a) directs that the "decision to arrest and charge shall not . . . (3) be based solely on a request by the victim. . . ."

Decisions regarding the scope of an investigation— whether probable cause for an arrest exists, whether information is speedy or not, whether to seek an arrest warrant or make a warrantless arrest, when and how

best to pursue a wanted person, the number of police officers that are needed to conduct and complete an investigation, whether coordination with other agencies is necessary during an investigation, the search for a suspect or the pursuit of that suspect is appropriate and the proper supervision of subordinates—all require a municipal police officer to employ wide discretion and to exercise judgment. As municipal employees engaged in discretionary functions, these defendants possess qualified governmental immunity from liability unless some recognized exception dissolves that immunity. See *Tryon* v. *North Branford*, 58 Conn. App. 702, 708, 755 A.2d 317 (2000). The sole exception proffered by Florence is that the decedents were identifiable persons subjected to imminent harm by the defendants' negligent conduct. For the purpose of the summary judgment motion, the court assumes both decedents met the identifiable person prong of that exception to immunity.

The "imminent harm" aspect of the exception is very restrictive and applies only to risks that are temporary and confined in space. See *Purzycki* v. *Fairfield*, 244 Conn. 101, 110, 708 A.2d 937 (1998). "Imminent harm" excludes perils that might occur, if at all, at some unspecified time in the future. *Evon* v. *Andrews*, 211 Conn. 501, 508, 559 A.2d 1131 (1989). In *Evon*, a danger of serious injury and death arose from pervasive and persistent fire and building code violations that remained uninspected and unabated by municipal employees who bore such responsibilities. Id. Those alleged omissions proved fatal for five persons. Id., 501 n.1. Because the risk posed by the negligent acts was liable to occur at some "unspecified time in the future," it was not imminent harm. Id., 508.

Similarly, in *Doe* v. *Board of Education*, 76 Conn. App. 296, 819 A.2d 289 (2003), our Appellate Court held that the negligent failure to secure or to supervise an

empty classroom during school hours failed to create "imminent harm." Id., 305. A student was raped in such a classroom, but because such injury might occur at some unspecified future date, governmental immunity foreclosed liability against municipal employees. Id.

In *Sestito* v. *Groton*, 178 Conn. 520, 423 A.2d 165 (1979), a police officer lost qualified governmental immunity because he failed to intervene to quell an *ongoing* fistfight that resulted in the fatal shooting of one of the disputants. Id., 526.

It is evident that our case law imposes a "then and there" characteristic with respect to "imminent harm." There is a distinction between negligent acts or omissions that creates a foreseeable and even continual exposure to harm at some unknown, future time and place, and "imminent harm." As previously noted, "imminent harm" is a risk of injury confined to a particular place and of short duration. *Purzycki* v. *Fairfield*, supra, 244 Conn. 110.

None of the negligent conduct alleged against the police officers in this case subjected Jenny McMechen to imminent harm within the meaning ascribed to that phrase by our appellate courts. No defendant came upon or was asked to intervene in an ongoing altercation between her and Latour and then failed to respond to defuse the situation. No defendant received any information that Latour was en route to a particular location to confront her or that he had an intention to encounter her at a particular time or place.

Instead, these defendants received after the fact reports of events that occurred a day or two earlier. As to Remillard, Geyer and Suprenant, their last communication with Jenny McMechen occurred more than forty days before Latour murdered her. As to Esposito, his involvement with the May 27, 2001 incident preceded her death by more than six months. None of the

negligent conduct alleged occurred on the day of the shooting or at the location of the murder. The risk of harm to Jenny McMechen created by the purported deficiencies of allowing Latour to remain at large could occur, if at all, at some unspecified time and place in the future. Consequently, these defendants retain qualified governmental immunity barring liability for the negligent acts and omissions alleged in the complaint.

Summary judgment is, therefore, granted as to counts three and four and seven through sixteen.

## II

## INDEMNIFICATION

In counts seventeen and eighteen of the amended complaint, Florence sues the town of Plainfield for indemnification under § 7-465 for the bodily injury and death caused by its employees. Such liability is contingent on the employee being liable for such damages. *Martyn* v. *Donlin*, 151 Conn. 402, 405, 198 A.2d 700 (1964). Having granted the motion for summary judgment in favor of the municipal employees on all the negligence counts against them, the motion must be granted in favor of the town of Plainfield as to these counts also.

## III

## RECKLESSNESS

Counts five and six allege that Remillard recklessly caused the wrongful deaths of the decedents. Qualified governmental immunity is inapplicable to injury caused by wanton or wilful behavior. *Hoffman* v. *Bristol*, 113 Conn. 386, 391, 155 A. 499 (1931); see also *Burns* v. *Board of Education*, 228 Conn. 640, 645, 638 A.2d 1 (1994).

After reviewing the pleadings and the documentary proof submitted, the court determines that genuine factual disputes exist as to whether Remillard's conduct

was reckless and as to proximate causation. Consequently, the motion for summary judgment is denied as to counts five and six.

To summarize, the motion for summary judgment is denied as to counts five and six of the amended complaint and granted as to all other counts.