Timothy **KENDRICK** and Cecelia **Kendrick, Plaintiffs,**

v.

**TOWN OF WINCHESTER/CITY OF WINSTED, John Wilnauer, Joseph Beadle, The Capitol Products Company, and D & M Construction, Inc., Defendants.**

**No. 3:97 CV 407(GLG).**

United States District Court, D. Connecticut.

May 26, 1998.

George B. Simoncelli, Jr., Muschell & Phalen, Torrington, CT, for Timothy Kendrick, Cecelia Kendrick.

Linda Gray MacDonald, Michael J. Rose, Howd & Ludorf, Hartford, CT, Michael J. Lefebvre, McAndrews & Lefebvre, Hartford, CT, for Town of Winchester.

Kevin F. Nelligan, Capecelatro & Nelligan, Canaan, CT, Michael J. Lefebvre, McAndrews & Lefebvre, Hartford, CT, for John Wilnaur.

Linda Gray MacDonald, Michael J. Rose, Howd & Ludorf, Hartford, CT, for Joseph Beadle.

Robert G. Oliver, Kenneth J. Mulvey, Jr., David J. Crotta, Jr.; James M. Hyland, Mulvey, Oliver & Gould, New Haven, CT, Capitol Prod. Co.

James G. Geanuracos, Elizabeth M. Cristofaro, Skelley Rottner, P.C., Hartford, CT, for D&M Const., Inc.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant John Wilnauer moves to dismiss Counts Four, Five, and Six of plaintiff's amended complaint (**document # 57**). For the reasons discussed below, defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiffs, Timothy and Cecelia Kendrick, operated a vending machine business, known as Kenco Vending. To conduct their business, plaintiffs leased a large warehouse from The Capitol Products Company ("Capitol Products") at 81 Gay Street, Winsted, Connecticut. On January 13, 1996, the roof of the building and the supporting concrete block walls collapsed under a heavy snow load. The Fire Marshal of the Town of Winchester/City of Winsted, Joseph Beadle, took control over the premises and allegedly prohibited plaintiffs from entering the building in order to remove their property. Defendant Beadle subsequently relinquished control over the premises to the Building Official for the Town of Winchester/City of Winsted, John Wilnauer.

Pursuant to a letter to Capitol Products dated January 18, 1996, Wilnauer ordered Capitol Products to demolish the building because he determined that the damage was severe enough to order the building condemned, as provided by section 120 of the Connecticut Basic Building Code and C.G.S.A. § 29–252. Am.Compl.Ex. A. Wilnauer stated that Capitol Products must demolish the building, remove all the rubble, and make the site safe no later than January 31, 1996. *Id.* Capitol Products contracted with D & M Construction Corp. ("D & M") to perform the demolition and to remove the rubble. On or about January 19, 1996, D & M gave written notice to all adjoining property owners of the pending demolition, but did not specifically notify plaintiffs. On January 23, 1996—five days after Wilnauer issued the condemnation order—D & M demolished the building and removed the rubble, including the building's contents.

Plaintiffs allege that they had stored personal property used in their vending machine business in the building before the demolition. Plaintiffs' sixteen count complaint arises from their inability to remove their property from the building before the demolition. Counts Four through Six relate to defendant Wilnauer's conduct, and allege that he violated 42 U.S.C. § 1983 by depriving plaintiffs of their due process rights and right to just

compensation for the taking of their property; infringed Article First, Sections 8 and 11 of the Connecticut State Constitution for taking plaintiffs' property without due process and without just compensation; and acted negligently under Connecticut common law regarding the building's condemnation and demolition. Defendant Wilnauer then filed this motion to dismiss for failure to state a claim against him upon which relief may be granted. On May 18, 1998, this Court heard oral arguments on this motion.

## *DISCUSSION*

When deciding a motion to dismiss for failure to state a claim, a court must accept as true the complaint's factual allegations and must draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994); *see Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). A court cannot grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)) (additional citation omitted).

## I. COUNT FOUR

Count Four of the amended complaint alleges that defendant violated 42 U.S.C. § 1983 for depriving plaintiffs of their rights to due process and just compensation for the taking of their property based on the Fifth and Fourteenth Amendments. Defendant advances two reasons why Count Four should be dismissed based on whether Count Four is construed as an official or individual capacity, or both, claim.

### A. Official Capacity

Defendant first argues that Count Four should be dismissed if it is deemed an official capacity claim because Count Four duplicates Count Eight. He notes that plaintiffs brought identical claims against him, in his official capacity (Count Four), and the municipality (Count Eight). He asserts that by suing him in his official capacity, plaintiffs are effectively suing the municipality. Thus, to the extent that Count Four raises an official capacity claim, defendant argues that Count Four should be dismissed because plaintiffs raise the same claim in Count Eight against the Town of Winchester/City of Winsted ("Town").

■ Defendant correctly notes that in official capacity suits, the real party in interest is the government entity or municipality, and not the officer himself. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir.), *cert. denied*, 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993). Generally, officers sued in their official capacities are not immune from suit, *Owen v. City of Independence*, 445 U.S. 622, 638 & n. 18, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), except the official may raise any immunity which is possessed by the government entity. *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

■ There is no basis for defendant's argument that the claim against him should be dismissed because plaintiffs asserted an identical claim against the municipality in Count Eight. As an initial matter, we note that the claims asserted in Counts Four and Eight are not identical. Count Four is based on defendant's failure to notify plaintiffs of the scheduled demolition, whereas Count Eight alleges that the Town has a policy against notifying persons, similar to plaintiffs, who have a property interest in buildings scheduled for demolition. Thus, although plaintiffs assert violations of 42 U.S.C. § 1983 in both counts, the bases for these counts are different.

■ Additionally, a plaintiff in a section 1983 case is not required to specifically state whether the cause of action is against the

officer in his official or individual capacity. *See Frank,* 1 F.3d at 1326. Instead, "when the face of a complaint fails to state clearly whether a government official is being sued in his official capacity, or his individual capacity, or both, courts look to the course of proceedings to determine the nature of the liability to be imposed." *Id.* (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)) (internal quotations omitted). Here, Count Four does not specify whether it is against Wilnauer in his official or individual capacity. At this time, due to the limited development of the proceedings, we decline to prohibit plaintiffs from asserting both official and individual capacity claims. Indeed, there is no limitation on plaintiffs' ability to sue Wilnauer in both his official and individual capacities.

Assuming plaintiffs are suing defendant in his official capacity, plaintiffs are not prohibited from raising claims against a municipal officer and a municipality in the same lawsuit. *Sims v. City of New London,* 738 F.Supp. 638, 642 (D.Conn.1990). Defendant's position is further weakened by the stipulation of settlement entered into between plaintiffs and the Town on February 26, 1998 which dismissed all claims against the Town, including Count Eight. Plaintiffs, however, did not release the Town from any vicarious liability or *Monell*[1] liability attributable to the Town based on defendant's actions as a policy maker. Consequently, we deny defendant's motion to dismiss on Count Four to the extent that Count Four alleges an official capacity claim.

### B. Individual Capacity

Second, defendant contends that Count Four should be dismissed if it is construed as an individual capacity claim because he is entitled to qualified immunity for any claims against him in his individual capacity. In a section 1983 case, a municipal officer may be shielded from liability in his individual capacity based on qualified immunity. *Shechter v. Comptroller of New York,* 79 F.3d 265, 268 (2d Cir.1996). Because qualified immunity is

an affirmative defense, defendant bears the burden of proving his entitlement to it. *Id.* at 270.

An official is entitled to qualified immunity if his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Here, the parties do not dispute that the rights asserted by plaintiffs—due process and just compensation for a taking—were clearly established when Wilnauer issued the condemnation order and oversaw its execution. Even if a violation did occur, an official may be protected "if it was objectively reasonable for the official to believe that his acts did not violate those rights" at the time of the challenged action. *Frank,* 1 F.3d at 1328; *see Danahy v. Buscaglia,* 134 F.3d 1185, 1189 (2d Cir.1998).

In cases involving clearly established rights, the entitlement to qualified immunity generally turns on the particular facts of the case. *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). A court may still decide the qualified immunity issue on a motion to dismiss. *Gittens v. LeFevre,* 891 F.2d 38 (2d Cir.1989); *Bolanos v. Coughlin,* Civ. No. 91–5330, 1993 WL 762112, at *10 (S.D.N.Y. Oct.15, 1993). The defendant must show that the facts alleged in the complaint are such that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (citations and internal quotations omitted). Generally, a government or municipal officer's actions are considered objectively unreasonable "when no officer of reasonable competence could have made the same choice in similar circumstances." *Id.*

On the due process claim, plaintiffs argue that defendant Wilnauer should have

---

1. Monell v. Department of Social Servs. of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

notified them of the scheduled demolition so they could have removed their belongings from the building beforehand. Plaintiffs contend that Wilnauer knew they were tenants in the building and stored their business property in the building. Contrary to plaintiff's assertions, we find that defendant is entitled to qualified immunity in his individual capacity because he was not required to notify tenants, who may have property interests in a building's contents, of a scheduled demolition of the building.

Plaintiffs first argue that Wilnauer was required to notify them and post a notice of his condemnation order pursuant to section 120.3 of the Connecticut State Building Code as set forth in the BOCA National Building Code § 120.3, at 14 (11th ed.1990), *supplemented by* BOCA National Building Code Accumulative Supplement (1992), and *supplemented by* State Building Code, Connecticut Supplement (1994) ("State Building Code"). Section 120.3 of the State Building Code provides only that a building official must notify in writing the "owner, agent *or* person in control of the building" when the building official finds an unsafe condition in the building. *Id.* (emphasis added). In the written notice, the building official must describe the building which was deemed unsafe, and he must either specify the necessary repairs which must be made or require the unsafe building to be demolished within a specified time. Wilnauer provided this notice to the building's owner, defendant Capitol Products, on January 18, 1996. In this condemnation order, Wilnauer instructed Capitol Products to demolish the building and make the site safe by January 31, 1996. Notably, section 120.3 sets forth the notice requirement in the disjunctive rather than the conjunctive. Thus, by providing this written notice to Capitol Products, Wilnauer complied with the requirements of section 120.3 of the State Building Code.

Additionally, there is no statutory or regulatory provision requiring a building official to notify tenants of a scheduled demolition or to post notice of the scheduled demolition at the unsafe building. Rather, the Connecticut Demolition Code, C.G.S.A. §§ 29–401 through 29–415, provides only that the owner

of a structure to be demolished must sign the permit for the structure's demolition and that adjoining property owners must receive notice of the demolition. Here, after Capitol Products contracted with D & M to demolish the building, D & M notified the building's adjoining property owners of the scheduled demolition pursuant to C.G.S.A. § 29–407. D & M did not notify plaintiffs, nor was it required to. By acting in accordance with the state statutes and regulations, we find that Wilnauer acted objectively reasonable and is therefore entitled to qualified immunity in his individual capacity on the due process claim.

We note that plaintiffs nonetheless contend that they *should* have been given notice. In essence, plaintiffs are arguing that section 120.3 is unconstitutional as applied in this case because they were the building's only tenants. Plaintiffs, however, may make this argument against defendant in his official capacity, which is a claim that we have determined survives this motion to dismiss.

■ On the takings claim, plaintiffs contend that defendant's actions constituted a taking of their property without just compensation because they were unable to remove their business property from the building before its demolition. They allege that defendant had actual knowledge that plaintiffs were tenants in lawful possession of the building and that they had stored their personal business property in the building. In takings cases, however, "[n]otice and hearing are required only with respect to that portion of the proceedings which relate to the determination of just compensation, and are not required with respect to the actual taking of the land." *Smalls v. Ives*, 296 F.Supp. 448 (D.Conn.1968). Because defendant was not required to notify plaintiffs of the scheduled demolition for purposes of the takings claim, we find that he acted objectively reasonable in issuing and carrying out his condemnation order. Thus, defendant is entitled to qualified immunity in his individual capacity on the takings claim.

Accordingly, we deny defendant's motion to dismiss to the extent that Count Four raises official capacity claims, and we grant defendant's motion to dismiss on Count Four

to the extent that it alleges individual capacity claims because defendant is entitled to qualified immunity.

## II. COUNT FIVE

Count Five of the amended complaint alleges that Wilnauer's actions in connection with the condemnation order constituted a taking of plaintiffs' property without due process of law and just compensation in violation of Article First, sections 8 and 11 of the Connecticut State Constitution. Wilnauer moves to dismiss Count Five for failure to state a claim under Connecticut law because defendant argues that the Connecticut Supreme Court does not recognize private rights of action under these provisions of the State Constitution. We find that plaintiffs may sue under Article First, Section 11 for the alleged taking of their personal property, but that the Connecticut Supreme Court's ruling in *Kelley Property Development, Inc. v. Town of Lebanon,* 226 Conn. 314, 627 A.2d 909 (1993), precludes plaintiffs from bringing a right of action directly under Article First, Section 8 for the alleged due process violation.

■ Generally, if no statute provides a remedy to a person claiming a taking of property, the person may sue to recover any damages under Article First, Section 11 of the Connecticut State Constitution. *Anselmo v. Cox,* 135 Conn. 78, 81, 60 A.2d 767, 769, *cert. denied,* 335 U.S. 859, 69 S.Ct. 132, 93 L.Ed. 405 (1948); *see Textron, Inc. v. Wood,* 167 Conn. 334, 342, 355 A.2d 307, 313 (1974) ("'[w]e have said, for example, that '[w]hen possession has been taken from the owner, he is constitutionally entitled to any damages which he may have suffered, and if our statute failed to provide a remedy he could, nevertheless, sue to recover such damages.'") (citations omitted). Here, defendant does not cite any statutory procedures that

would provide a monetary remedy to plaintiffs for the alleged taking of their property. Consequently, this Court has jurisdiction to determine whether there was a taking of plaintiffs' property in the constitutional sense. *Horak v. State,* 171 Conn. 257, 260–61, 368 A.2d 155, 158 (1976).

On the due process claim under Article First, Section 8, defendant urges this Court to find that plaintiffs' due process cause of action is barred under the *Kelley* doctrine. In *Kelley,* the Connecticut Supreme Court held that a plaintiff could not seek damages under Article First, Section 8 of the State Constitution if alternative remedies were available to the plaintiff. *Kelley,* 226 Conn. at 342–43, 627 A.2d at 924. The plaintiffs had argued that the federal line of cases under *Bivens*[2] supported their claim for damages brought directly under the due process provision of the State Constitution. The court disagreed and stated that "as a general matter, we should not construe our state constitution to provide a basis for the recognition of a private damages action for injuries for which the legislature has provided a reasonably adequate statutory remedy." *Id.* at 339, 627 A.2d at 922. Based on the legislature's enactment of C.G.S.A. § 8–8, which permits an aggrieved person to appeal to superior court from an administrative decision, the court found that the plaintiff had adequate relief for the defendants' allegedly unconstitutional conduct. *Id.* at 340, 627 A.2d at 923. Thus, the court refused to recognize a *Bivens*[3]-type action for violations of the due process provision of the State Constitution.

Recently, the Connecticut Supreme Court in *Binette v. Sabo,* 244 Conn. 23, 710 A.2d 688 (1998), revisited this issue when it decided to recognize a private right of action for violations of Article First, Sections 7 and 9 of the State Constitution based on an alleged

---

2. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* the Supreme Court recognized a private damages cause of action for a violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id.* at 389, 91 S.Ct. 1999.

3. In part, the Supreme Court relied on separation of powers principles to find that the avail-

ability of alternative federal remedies would generally preclude a cause of action under the federal *constitution. Bivens,* 403 U.S. at 396–97, 29 L.Ed.2d 619. The Connecticut Supreme Court raised similar considerations when it stated that separation of powers generally requires "judicial deference to legislative resolution of conflicting considerations of public policy." *Kelley,* 226 Conn. at 339, 627 A.2d at 922.

unreasonable search and seizure and unlawful arrest. At the outset, the court held that it had the power to create a damages action under the State Constitution. *Id.* at 33, 710 A.2d 688. After considering the factors set forth in *Bivens* for creating a constitutional cause of action, the court determined that the plaintiffs could sue directly under the State Constitution for the alleged violations of Article First, Sections 7 and 9, *Id.* at 35–48, 710 A.2d 688. Based on the facts before it, the court distinguished *Kelley* and followed *Bivens* because "the legislature has neither prohibited the creation of a constitutional tort action to remedy an unlawful search and seizure, nor has it crafted a meaningful alternative remedy for the constitutional violation." *Id.* 244 Conn. at 43, 710 A.2d 688.

 With the principles of *Binette* and *Kelley* in mind, we refuse to recognize a cause of action under Article First, Section 8 of the Connecticut State Constitution based on the availability of a meaningful alternative remedy for the alleged due process violation. Defendant argues, and we agree, that the principal remedy available to plaintiffs was the right to appeal from defendant's condemnation order. Pursuant to C.G.S.A. § 29–405:

> [a]ny person aggrieved by any order or decision of a building official may, within ten days of such order or decision, appeal therefrom to the superior court for the judicial district wherein such person · resides, and such appeal shall be a privileged matter to be heard by the court as soon after the return day as is practicable.

Plaintiffs contend that this remedy was unavailable to them, first because they had no notice of defendant's condemnation order, and second because the demolition took place within their ten-day appeal period. Plaintiffs distinguish between notice and knowledge of the demolition date. Specifically, plaintiffs argue that they never received official notice of the demolition. While defendant assert that plaintiffs had actual knowledge of the demolition because Mr. Kendrick was present at a meeting at the property about the demolition, plaintiffs nevertheless argue that they had no knowledge of the actual date of the demolition.

Assuming plaintiffs had notice of the condemnation order, there is no dispute that their remedy lay in section 29–405 before D & M demolished the building. Indeed, before the demolition, plaintiff's relief would have been the retrieval of their property.

After the building's demolition, plaintiffs still could have appealed to a superior court under section 29–405 as persons aggrieved by Wilnauer's order. Plaintiffs insist that they never received official notice of the scheduled demolition—either before or after the demolition—yet, once D & M demolished the building, plaintiffs concede that they had knowledge of the demolition. Based upon their knowledge, plaintiffs could have sought relief under section 29–405 because they acquired this knowledge within the ten-day appeal period. Plaintiffs contend that any appeal after the demolition would have been futile because they assert that a superior court is limited in the type of remedies it can award on an administrative appeal. Nothing in section 29–405 suggests such a limitation, nor is this Court aware of any authority providing that on an appeal under section 29–405 a superior court cannot award monetary damages. Thus, whether plaintiffs received official notice or acquired knowledge of the demolition after it occurred, plaintiffs could have sought relief under 29–405 because they were still within the ten-day appeal period. On such an appeal, plaintiffs could have sought monetary damages for the destruction of their property. It is also possible that plaintiffs could have sought the retrieval of their property from D & M, but it is unclear from the facts as alleged in the complaint what happened to their property after D & M demolished the building (it is possible that D & M removed the building's contents intact and later sold them, or that D & M simply demolished the contents along with the building).

We also note that plaintiffs may have recourse against defendant Capitol Products, the building's owner and plaintiffs' landlord. While we note that the availability of common law remedies might not alone defeat plaintiffs' claim for the creation of a *Bivens*-type cause of action, *see Kelley,* 226 Conn. at 340–41 & n. 30, 627 A.2d at 923 (declining to

hold that the availability of common law remedies would be sufficient to defeat a claim for the creation of a cause of action under the State Constitution), we do not attempt to canvass the types of claims which plaintiffs could have brought against Capitol Products, because we have already determined that plaintiffs had an available remedy through section 29–405.

Consequently, we deny defendant's motion to dismiss for failure to state a claim under the Connecticut State Constitution for the takings claim under Article First, Section 11, and we grant defendant's motion on the due process claim under Article First, Section 8.

## III. COUNT SIX

The Sixth Count of the amended complaint alleges that defendant carelessly and negligently performed his duties in overseeing the execution of his condemnation order. Specifically, plaintiffs contend that defendant negligently inspected the building, prohibited plaintiffs from entering the building when it became safe to do so, failed to safeguard plaintiffs' property, failed to account for plaintiff's ownership interest in ·issuing the condemnation order, and failed to supervise the actual demolition of the building. Defendant argues that this Court should dismiss Count Six because it is barred by the doctrine of governmental immunity.

■ To establish the defense of governmental immunity, a municipal employee must demonstrate that the challenged actions were part of his or her discretionary, not ministerial, functions. *Gauvin v. City of New Haven*, 187 Conn. 180, 184, 445 A.2d 1, 3 (1982). According to the Connecticut Supreme Court, a ministerial function refers to "a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." *See, e.g., Wright v. Brown*, 167 Conn. 464, 471, 356 A.2d 176, 181 (1975). Conversely, a discretionary or governmental act is "performed wholly for the direct benefit of the public and [is] supervisory or discretionary in nature." *Gauvin,* 187 Conn. at 184, 445 A.2d at 3.

■ Plaintiffs contend that the manner in which Wilnauer oversaw the execution of the condemnation order involved ministerial functions. We disagree. After Wilnauer issued the condemnation order, he continued to be responsible for administering the State Demolition Code, including passing "upon any question relative to the manner of demolition or materials or equipment to be used in the demolition of buildings or structures." C.G.S.A. § 29–404. He was also required to ensure that safety measures were complied with pursuant to section 29–408, and that D & M did not use demolition procedures "which involve[d] hazard or risk to the general public or unnecessary danger to the workmen" pursuant to section 29–411. Finally, Wilnauer was obligated to determine that D & M disposed of the accumulated material from the demolition in a suitable manner. C .G.S.A. § 29–412. Thus, the State Building Code required Wilnauer to confirm that his condemnation order was executed properly. Consequently, we find that overseeing the execution of his condemnation order demanded an exercise of Wilnauer's judgment. *See Evon v. Andrews*, 211 Conn. 501, 506, 559 A.2d 1131, 1134 (1989) (holding that "what constitutes a reasonable, proper or adequate inspection involves the exercise of judgment" because even though the inspection itself may seem ministerial, a building official must decide, in his or her judgment, whether a building falls below standard, thereby requiring remedial orders).

■ Even if a municipal employee performed a discretionary function, liability may still attach under three circumstances: (1) if, under the circumstances, a public officer's actions would subject an identifiable person to imminent harm; (2) if a public officer failed to enforce certain laws and the plaintiff has a statutory right to sue for that failure; and (3) if the public officer's alleged conduct was done maliciously, wantonly, or with the intent to injure, rather than negligently. *Evon v. Andrews*, 211 Conn. 501, 505, 559 A.2d 1131, 1134 (1989). Here, plaintiffs assert that the "identifiable person/imminent harm" exception applies to overcome any governmental immunity. Plaintiffs contend that Wilnauer knew they were tenants who stored their business property in the building. When Wilnauer failed to notify

them of the scheduled demolition, plaintiffs argue that he subjected them "to the imminent harm of the destruction of their personal property." At the outset, we note that this exception "has received very limited recognition" in Connecticut. *Id.* at 507, 559 A.2d at 1134. We reject plaintiffs argument because they misconstrue the nature of the "identifiable person/imminent harm" exception. The cases addressing this exception generally involved imminent harm to persons, not property. *See id.* at 508, 559 A.2d at 1135 (granting governmental immunity to municipal officials because plaintiffs' decedents were not subject to imminent harm based on the defendants' alleged failure to prevent a fire in which the decedents died); *see also Purzycki v. Town of Fairfield,* 244 Conn. 101, 708 A.2d 937 (1998) (finding imminent harm existed because the danger was foreseeable in a case involving a schoolchild who was injured en route to recess in an unsupervised area); *Shore v. Town of Stonington,* 187 Conn. 147, 444 A.2d 1379 (1982) (refusing to apply the "identifiable person/imminent harm" exception to a case involving a police officer's failure to arrest an allegedly intoxicated person during a traffic stop when the person later collided with another car, the driver of which later died from injuries sustained during the collision); *Sestito v. Groton,* 178 Conn. 520, 423 A.2d 165 (1979) (finding that a trial court erred in directing a verdict in favor of the police officer/defendant in a case in which the police officer did not intervene in a bar-related brawl until he heard gunshots, even though he was on-duty and observed the argument from its beginning). Indeed, plaintiff has not cited, and this Court has not found, any case where the Connecticut Supreme Court has applied or indicated its willingness to extend this exception to imminent harm to property. Therefore, we grant defendant's motion to dismiss on Count Six because defendant is entitled to governmental immunity.

## CONCLUSION

For the foregoing reasons, defendant's motion (**document #57**) is GRANTED on Count Four to the extent Count Four states a section 1983 claim against defendant in his individual capacity. We also GRANT defendant's motion on Count Five for the alleged violation of Article First, Section 8 of the Connecticut State Constitution (due process claim) and Count Six (negligence). We DENY defendant's motion on Count Four to the extent it raises an official capacity claim. It is also DENIED on Count Five for the alleged violation of Article First, Section 11 of the Connecticut State Constitution (takings claim).

**SO ORDERED.**